UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>HUY TRINH,<br>Defendant. | Case No. 10-cr-00385-SI-1<br><br>**ORDER GRANTING DEFENDANT TRINH'S MOTION FOR COMPASSIONATE RELEASE**<br><br>Re: Dkt. No. 22 |

On September 1, 2021, the Court held a hearing on defendant Huy Trinh's motion for compassionate release. For the reasons stated below, the Court GRANTS the motion and resentences Mr. Trinh to time served, with no term of supervised release to follow.

**BACKGROUND**

Defendant Huy Trinh is 54 years old and is currently incarcerated at FCI Mendota in Mendota, California. In March 2012, he pled guilty pursuant to a plea agreement to one count of conspiracy to manufacture and distribute marijuana and one count of possession of a firearm in furtherance of a drug trafficking crime. In accordance with the plea agreement, Mr. Trinh was sentenced to 180 months. To date, he has served 160 months of his sentence (approximately 89%), and his current release date is April 2, 2023.

In March 2021, while Mr. Trinh was incarcerated in Oklahoma, his left leg became swollen and he was taken to the hospital. Mr. Trinh was diagnosed with deep vein thrombosis ("DVT") in his left leg and he tested positive for the COVID-19 virus. *See* Def's Ex. 7A at 4 (Dkt. No. 271). Mr. Trinh underwent surgery to remove an "extensive clot burden" that was "induced by COVID-19 infection." *Id*. at 4, 100-101. Mr. Trinh was prescribed a blood thinning medication and told to

"increase activity" upon his discharge from the hospital. *Id*. at 5, 137, 201, 212.

On August 31, 2021, defense counsel filed a supplemental reply brief stating that earlier that day she had received two emails from Mr. Trinh in which he stated that his left leg (where he previously suffered COVID-related blood clots) was once again extremely swollen. According to the supplemental reply, "Mr. Trinh also states that he is not consistently receiving his anticoagulant medication and that he has not received a vascular evaluation that was approved on July 26th." Supp. Reply at 2 (Dkt. No. 283).[1] Defense counsel also submitted updated medical records from July 2021 in which FCI Mendota staff noted that they did not have any of Mr. Trinh's medical records from the Oklahoma hospital where he underwent surgery. *See id*., Ex. A. Defendant asserts that these medical records are necessary for FCI Mendota to provide adequate medical care for Mr. Trinh's current blood clotting disorder and swollen leg.

At the September 1 hearing, counsel for the government stated that after receiving defendant's supplemental reply he contacted FCI Mendota. Counsel stated that he learned that Mr. Trinh was seen by medical staff on the morning of September 1, and that staff measured Mr. Trinh's legs and his left leg was swollen and larger than his right leg. Defense counsel reported that she had also spoken to Mr. Trinh that morning, and that Mr. Trinh stated that the measurements did not accurately reflect the extent of the swelling because he was wearing compression socks when he was measured. Mr. Trinh also reports feeling pain. Counsel for the government confirmed that the vascular evaluation had not yet been scheduled for Mr. Trinh, and that the "target date" for such an evaluation is October 22, 2021. *See also* Supp. Reply, Ex. A (medical notes from FCI Mendota stating that Mr. Trinh suffers from a "chronic embolism and thrombosis of vein" and that the "target date" for vascular evaluation is October 22, 2021). Counsel for the government also questioned defendant's assertion that FCI Mendota did not currently have Mr. Trinh's Oklahoma medical records; however, counsel did not have any affirmative information showing that in fact FCI Mendota has requested or received Mr. Trinh's Oklahoma records.

---

[1] Defendant's reply brief stated that Mr. Trinh reported that his medication "ran out" and that he had asked for a refill on August 11 and that as of August 15, 2021 he had still not received his medication. Reply at 2 (Dkt. No. 281). At the hearing on this motion, counsel for the government disputed that assertion and stated that Mr. Trinh's medication was consistently refilled.

In addition, Mr. Trinh has submitted medical records in support of his assertion that he also suffers from asthma and a seizure disorder, two conditions that he argues place him at greater risk of complications should he become reinfected with COVID-19. The government does not dispute that Mr. Trinh experienced a fall and seizure in 2017 that required medical treatment, but contends that the records do not show that he has a current seizure disorder. The government also asserts that the medical records show that Mr. Trinh has mild and intermittent asthma, not moderate to severe asthma.

Mr. Trinh's motion states that he received the one-dose Johnson & Johnson COVID-19 vaccine, although it is not clear when he was vaccinated. According to the BOP's website, FCI Mendota currently has 44 inmates who have tested positive for COVID-19. *See* http://bop.gov/coronavirus/.

Mr. Trinh requests compassionate release on the ground that his blood clotting disorder, seizure disorder, and asthma, collectively and individually, place him at greater risk of developing complications in the event he contracts COVID-19 again. Mr. Trinh requests that the Court resentence him to time served or alternatively to order that the remainder of his sentence to be served on home confinement.

**LEGAL STANDARD**

Defendant filed his motion pursuant to 18 U.S.C. § 3582(c)(1)(A). As amended by the First Step Act, that statute provides:

> [T]he court, upon motion of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

The Ninth Circuit has held "the Sentencing Commission has not yet issued a policy statement 'applicable' to 3582(c)(1)(A) motions filed by a defendant" and "the Sentencing Commission's statements in U.S.S.G. § 1B1.13[2] may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam).

**DISCUSSION**

As an initial matter, the Court finds that Mr. Trinh has exhausted administrative remedies pursuant to 18 U.S.C. § 3582(c)(1)(A). Counsel has submitted a letter showing that Mr. Trinh requested compassionate release, and defendant's motion states that more than 30 days have passed without receiving any response to the letter.[3] The government does not dispute that Mr. Trinh has exhausted his administrative remedies.

The government opposes compassionate release on the sole ground that defendant has failed

---

[2] Section U.S.S.G. § 1B1.13 states:

Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

(1) (A) extraordinary and compelling reasons warrant the reduction; or

(B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. Application Note 1 states that "extraordinary and compelling reasons exist . . . [when] [t]he defendant is (I) suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."

[3] The letter submitted by defendant is dated May 20, 2020, however defendant's motion states that the letter was submitted on May 20, 2021. As counsel was not appointed until January 2021, it appears that the date on the letter is a typographical error.

4

to present extraordinary and compelling reasons warranting release. The government argues that because Mr. Trinh has already had COVID-19 and has received the Johnson & Johnson vaccine, there is very little risk that Mr. Trinh will be reinfected with the virus. The government also asserts that Mr. Trinh has not presented evidence of medical conditions that, according to CDC guidance, place him at a significant enhanced risk during the current pandemic.

The Court finds Mr. Trinh has presented extraordinary and compelling reasons justifying compassionate release based on Mr. Trinh's ongoing blood clotting disorder, age, other health issues, and possibility of reinfection. Of primary concern is Mr. Trinh's blood clotting disorder and the fact that Mr. Trinh's left leg is currently swollen and painful. The CDC has stated that cerebrovascular disease or disease that affects blood flow to the brain is a condition that can lead to severe illness from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html; *see also United States v. Hanson*, 470 F. Supp. 3d 1197, 1201-1202 (D. Or. 2020) (granting compassionate release to inmate who had genetic condition predisposing him to blood clots and who had experienced two pulmonary embolisms in the past, along with other health issues such as asthma). It is undisputed that earlier this year Mr. Trinh had emergency surgery to remove extensive blood clots from his left leg that he developed as a result of COVID-19, and it is further undisputed that he is presently experiencing swelling and pain in that same leg. The Court is troubled by Mr. Trinh's reports of interruptions in receiving his blood thinning medication. The Court is also troubled that although a vascular evaluation was approved in July, and notwithstanding the current swelling and pain in his leg, the evaluation has not yet occurred or been scheduled, with only a "target date" for such an evaluation in late October. Further, according to defendant's papers – and also not disputed by the government – it is difficult if not impossible for Mr. Trinh to exercise (as recommended by his doctors) because of COVID protocols and lockdowns at the facility. Thus, Mr. Trinh is not able to provide self-care for his blood clotting disorder.

The government argues that Mr. Trinh's risk of severe viral symptoms and death is reduced because he has already had COVID and has received a COVID-19 vaccine. While the current scientific evidence indicates that vaccines provide significant protection against developing serious

5

illness, the government does not dispute that vaccinated and/or previously infected individuals do face some risk of reinfection and becoming sick. Further, the Court notes that the scientific evidence regarding COVID-19 is constantly evolving, and that the studies and cases cited by the government in its papers pre-date the spread of the more infectious Delta variant of COVID-19.

The Court also finds that Mr. Trinh is not a danger to the community, and the government does not contend otherwise. Upon release, Mr. Trinh will live with a long-time friend who states that she can provide him with stable and secure employment.

Finally, the Court finds the 18 U.S.C. § 3553(a) factors weigh in favor of Mr. Trinh's release. Mr. Trinh has served approximately 89% of his sentence, and thus resentencing him to time served comports with § 3553(a)(2)(B)'s requirement to "afford adequate deterrence to criminal conduct." Importantly, granting Mr. Trinh compassionate release aligns with the need to "provide the defendant with . . . medical care . . . in the most effective manner." 18 U.S.C. § 3553(a)(2)(D).

## CONCLUSION

Defendant shall be released only after all release and travel plans are in place, and after he has satisfied any quarantine requirements imposed by FCI Mendota.

**IT IS SO ORDERED**.

Dated: September 2, 2021

SUSAN ILLSTON
United States District Judge